J-A32037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  K.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  THE CITY OF PHILADELPHIA DEPARTMENT OF HUMAN SERVICES | |
| | No. 1620 EDA 2016 |

Appeal from the Order Entered April 26, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at Nos.: CP-51-DP-000905-2016
FID#51-FN-000830-2016

BEFORE:  MOULTON, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                          **Filed January 17, 2017**

Appellant, the City of Philadelphia Department of Human Services (DHS), appeals from the order of the trial court adjudicating K.C., a minor, dependent.  The trial court adjudicated K.C. dependent, but declined to find that DHS had made "reasonable efforts" to prevent or eliminate the need for placement.  DHS argues that the court erred by basing its conclusion of no "reasonable efforts" solely on DHS not having a placement plan at the

_____

[*] Retired Senior Judge assigned to the Superior Court.

adjudication hearing.[1]  Because we are constrained to agree, we reverse and remand to the trial court.

On April 26, 2016, the court adjudicated K.C. dependent for incorrigibility and a history of truancy.  The facts underlying the adjudication are not under dispute, so we decline to restate them fully here.  For the convenience of the reader, we note briefly that DHS received a report regarding K.C.'s behavior at home, where he often had violent outbursts.  K.C. had been referred to programs such as Big Brothers Big Sisters, but they did not curtail his improper and sometimes violent behavior.  On April 14, 2016, DHS filed a petition requesting that the court adjudicate K.C. a dependent child, describing the violent and destructive incidents as well as truancy issues.  In the petition, DHS also requested that K.C. be allowed to remain at home with his mother, and that the court enter a finding that DHS had made reasonable efforts to prevent his placement.

During a pre-hearing conference on April 26, 2016, the parties agreed that K.C. should be adjudicated dependent.  However, at the hearing, K.C.'s mother stated, for the first time, that she did not want him to return home with her.  Therefore, the parties also agreed that he be committed to the custody of DHS that day, and that he undergo a psychiatric evaluation.

---

[1] Federal funding for foster care program costs for K.C. will be denied to DHS because of the trial court's conclusion that it did not make reasonable efforts to prevent the need for removal.  *See* 42 U.S.C.A. § 672(a)(2)(ii).

At the adjudicatory hearing, counsel for DHS presented the pre-hearing conference agreement to the trial court. The court heard testimony related to the basis for adjudication and heard the recommendation of DHS "to adjudicate K.C. dependent based on present inability and incorrigibility." (N.T. Hearing, 4/26/16, at 6-9). DHS also stated its belief that it was "contrary to the health, welfare and safety for [K.C.] to remain in the home with [his] mother." (*Id.* at 9). DHS conceded that it did not have a placement for K.C. arranged on that date. (*See id.*). The court adjudicated K.C. dependent based on incorrigibility and a history of truancy. (*See id.* at 20). It concluded that it was contrary to K.C.'s health, safety, and welfare for him to stay in the home at the time. The court then explained:

> THE COURT: . . . I'm struggling with giving DHS reasonable efforts because it's hard for me to believe that based on the face of this you would not come with a placement in hand.
>
> [DHS COUNSEL]: . . . I think it was just our impression that mother was okay with him remaining. . . .
>
> THE COURT: Even if that was her conversation, you guys have to have a concurrent plan. And see, the thing about it is fair or unfair I hold DHS to a higher standard . . . . So my whole thing is you had to come in here with a placement. You had to. So because of that I can't give you reasonable efforts because it's put me in a situation that I feel like I have to be planning for a child and that shouldn't be my role here. So I can't give you reasonable efforts.

(*Id.* at 20-21).

On May 10, 2016, DHS filed a motion seeking reconsideration of the court's determination that it did not make reasonable efforts, alleging that instead of applying the reasonable efforts standard applicable for required

preplacement findings, 42 Pa.C.S.A. § 6351(b), the court erroneously applied the standard for matters to be determined at a permanency hearing, 42 Pa.C.S.A. § 6351(f). The court denied the motion on May 24, 2016. This timely appeal followed.[2]

DHS raises three issues on appeal.

1) Whether [DHS], a Pennsylvania Children and Youth Agency, may properly appeal that portion of the trial court's order which denied that it made reasonable efforts to prevent a child's placement, where the trial court applied the incorrect legal standard, where the facts do not support the trial court's order under the correct legal standard, and where DHS faces significant financial penalties as a result of the trial court's order[?]

2) Whether the trial court erred as a matter of law in applying an incorrect legal standard when determining whether DHS made reasonable efforts to prevent or eliminate the need for the placement of K.C., a minor child[?]

3) Whether the trial court erred as a matter of law in holding that the record evidence did not support an order finding that DHS made reasonable efforts to prevent or eliminate the need for the placement of K.C., where K.C. was found by the trial court to be incorrigible and truant, and where K.C. was found to be non-compliant with preventative services[?]

(DHS's Brief, at 4).[3]

---

[2] On May 25, 2016, DHS filed its notice of appeal together with its concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(a)(2)(i). The trial court entered its opinion on August 5, 2016. *See* Pa.R.A.P. 1925(a)(2)(ii).

[3] DHS's first issue was not included in its statement of errors complained of on appeal. However, because it simply addresses the rule to show cause issued by this Court on June 28, 2016, with respect to whether DHS had standing to appeal, we will consider the argument.

In its first issue, DHS argues that because the court denied its request for a finding of reasonable efforts, and such denial will result in a significant financial burden from the loss of federal funding, it is an aggrieved party with standing to appeal. (**See** DHS's Brief, at 14-22). We agree.

Our Rules of Appellate Procedure provide:

**Rule 501. Any Aggrieved Party May Appeal**

Except where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom.

Pa.R.A.P. 501. "[A] party is 'aggrieved' when the party has been adversely affected by the decision from which the appeal is taken." **In re J.G.**, 984 A.2d 541, 546 (Pa. Super. 2009), *appeal denied*, 991 A.2d 313 (Pa. 2010) (citation omitted); **see also In the Interest of W.M.**, 41 A.3d 618, 620 (Pa. Super. 2012) (permitting CYS appeal of no reasonable effort finding).

Here, DHS has demonstrated that it is an aggrieved party because the trial court denied it the full relief requested, a finding of reasonable efforts, and because that denial causes DHS to be ineligible for federal funding for the placement of K.C. **See** Pa.R.A.P. 501. Therefore, we conclude DHS has standing to pursue the instant appeal. We agree with the first claim.

In its second issue, DHS contends that the trial court erred because it applied an incorrect legal standard when the court denied DHS's request for a finding that it made reasonable efforts to prevent the need for removal of K.C. from his home. (**See** DHS's Brief, at 22-37). Specifically, it argues that the court did not properly apply the standard for preplacement findings

set forth in 42 Pa.C.S.A. § 6351(b), but instead applied the standard applicable for permanency hearings set forth in § 6351(f). (*See id.* at 22-25). Upon careful review, we are constrained to agree.

Our standard and scope of review in dependency cases is well settled.

> [W]e must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses.

*In re E.P.*, 841 A.2d 128, 131 (Pa. Super. 2003), *appeal denied*, 857 A.2d 679 (Pa. 2004) (citation omitted).

Here, DHS challenges the trial court's application of 42 Pa.C.S.A. § 6351, which sets forth guidelines applicable to various aspects of disposition of dependent children. Section 6351 provides, in pertinent part:

> **(b) Required preplacement findings.**—Prior to entering any order of disposition under subsection (a) that would remove a dependent child from his home, the court shall enter findings on the record or in the order of court as follows:
>
> > (1) that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and

(2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or

(3) if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances; or

(4) if the court has previously determined pursuant to section 6332 (relating to informal hearing) that reasonable efforts were not made to prevent the initial removal of the child from his home, whether reasonable efforts are under way to make it possible for the child to return home; and

(5) if the child has a sibling who is subject to removal from his home, whether reasonable efforts were made prior to the placement of the child to place the siblings together or whether such joint placement is contrary to the safety or well-being of the child or sibling.

The court shall not enter findings under paragraph (2), (3) or (4) if the court previously determined that aggravated circumstances exist and no new or additional reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family are required.

\* \* \*

**(e) Permanency hearings.—**

(1) The court shall conduct a permanency hearing for the purpose of determining or reviewing the permanency plan of the child, the date by which the goal of permanency for the child might be achieved and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child. . . .

\* \* \*

**(f) Matters to be determined at permanency hearing.—**At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

42 Pa.C.S.A. § 6351(b), (e)(1), (f)(1)-(5.1).

Here, the trial court's inquiry at the hearing with regard to whether reasonable efforts were made focused on whether DHS had made reasonable efforts to finalize a placement for K.C. The court did not discuss what efforts, if any, were made to "prevent or eliminate the need for removal of [K.C.] from his home", nor did it determine whether this was an emergency placement and therefore "such lack of services was reasonable under the circumstances[.]" 42 Pa.C.S.A. §§ 6351(b)(2), (3). Rather, it based its determination solely on DHS's failure to have a concurrent plan and come into the hearing with a placement. (*See* N.T. Hearing, 4/26/16, at 20-21). The court explained that its decision was based on DHS's assumed failure "to exhaust reasonable efforts to properly plan for placement for K.C. after

- 8 -

identifying the need for removal of this child from the home." (Trial Court Opinion, 8/05/16, at unnumbered page 3).[4]

The April 26, 2016 hearing was an adjudicatory hearing where the court found K.C. dependent and removed him from his home. Therefore, trial court was required to apply Section 6351(b) and determine, among other things, (1) that continuation of K.C. in his home would be contrary to his welfare, safety or health; and (2) whether reasonable efforts were made prior to the placement of K.C. to prevent or eliminate the need for removal of him from his home; or (3) if preventative services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances. *See* 42 Pa.C.S.A. §§ 6351(b)(1)-(3). Because it appears that the trial court misapplied Section 6351, and applied the standard set forth under subsection (f), related to permanency hearings, instead of subsection (b), we are constrained to conclude that the trial court did not apply the appropriate standard and therefore abused its discretion. *See In re E.P.*, *supra* at 131. DHS's second claim merits relief.

In its third issue, DHS argues that the court erred as a matter of law in holding that it failed to make reasonable efforts to prevent placement of K.C. based upon the court's finding that DHS did not have a permanent

_____

[4] We observe that DHS could not identify the need for removal until immediately before the hearing when Mother, for the first time, requested that K.C. be placed outside the home because of her fear of K.C. returning home with her.

placement plan at the time of the adjudication hearing. (*See* DHS's Brief, at 4, 37-44). We agree.

As discussed above, prior to entering an order of disposition that removes a dependent child from his home, the court shall enter a finding concerning "whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home," or "if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances[.]" 42 Pa.C.S.A. § 6351(b)(2), (3).

Here, the record is clear that up until the hearing, DHS did not seek removal of K.C. from his home. (*See* N.T. Hearing, at 10, 21). We observe that DHS could not identify the need for removal until mother changed her mind at the prehearing conference, immediately before the hearing. (*See id.* at 6, 9-10). However, the trial court did not consider whether reasonable efforts were made prior to the hearing to prevent removal of K.C., or whether this was an emergency placement such that a lack of services was reasonable. Rather, it based its conclusion solely on the fact that DHS did not have a "placement in hand" during the adjudication hearing. (*Id.* at 21). Therefore, we agree that the court erred as a matter of law in making a reasonable efforts determination without considering the criteria set forth in Section 6351(b)(2), (3). *See In re E.P., supra* at 131.

Order vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/17/2017</u>