J-S10032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: K.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: PHILADELPHIA DEPARTMENT OF HUMAN SERVICES | |
| | No. 1662 EDA 2016 |

Appeal from the Order Entered April 27, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0015141-2005

| | |
|---|---|
| IN THE INTEREST OF: T.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: THE CITY OF PHILADELPHIA, DEPARTMENT OF HUMAN SERVICES | |
| | No. 1677 EDA 2016 |

Appeal from the Order Entered April 27, 2016
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): CP-51-DP-0000921-2016

| | |
|---|---|
| IN THE INTEREST OF: M.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: THE CITY OF PHILADELPHIA, DEPARTMENT OF HUMAN SERVICES | |

J-S10032-17

Appeal from the Order Entered April 27, 2016
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): CP-51-DP-0000920-2016

IN THE INTEREST OF: N.B., A MINOR

IN THE SUPERIOR COURT OF
PENNSYLVANIA

APPEAL OF: THE CITY OF
PHILADELPHIA, DEPARTMENT OF
HUMAN SERVICES

No. 1684 EDA 2016

Appeal from the Order Entered April 27, 2016
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): CP-51-DP-0000922-2016

BEFORE: BENDER, P.J.E., DUBOW, J., and SOLANO, J.

MEMORANDUM BY SOLANO, J.:                    **FILED MARCH 29, 2017**

Appellant, the City of Philadelphia Department of Human Services ("DHS"), appeals from the orders of the family court adjudicating minors K.S. (born 2000), N.B. (born January 2005), T.B. (born December 2005), and M.B. (born 2007) (collectively, "the Children") as dependent, but declining to find that DHS had made "reasonable efforts" to prevent or eliminate the need for placement. After determining that DHS has standing to pursue the instant appeal, we vacate the orders below in part and remand to the family court for proceedings consistent with this decision.

- 2 -

On March 11, 2016, DHS received a General Protective Services ("GPS") report alleging that the Children had been evicted from their home sometime before Christmas 2015. Family Ct. Op., 8/10/16, at 1; N.T., 4/27/16, at 8. The GPS report stated that K.S. had a learning disability, had repeated grades due to ongoing truancy, and cried frequently; N.B., T.B., and M.B. had excessive truancy issues, as well.[1] According to the GPS report, the Children also suffered from malnourishment. At the time of the GPS report, K.S. was living with his grandmother's boyfriend and did not see his mother, A.B. ("Mother"), often; and N.B., T.B., and M.B. were living with Mother and her boyfriend in the boyfriend's home. Mother and the Children have had a history of transience — between October 2015 and April 2016, Mother and the Children lived in seven different locations.

GPS reported that K.S. had not received a medical "well visit" since 2011, and T.B. and M.B. had not had a medical examination since 2012. N.T. at 23, 38.[2]

_____

[1] During the 2014-2015 school year, N.B. had 22 unexcused absences, T.B. had 29 unexcused absences, and M.B. had 24 unexcused absences. During the 2015-2016 school year, these figures increased — N.B. had 60 unexcused absences, T.B. had 56 unexcused absences, and M.B. had 52 unexcused absences. Family Ct. Op., 8/10/16, at 1-2.

[2] The record is unclear as to N.B.'s medical history, but the family court appears to find that she also has had no medical care since 2012. *See* N.T. at 30, 32, 45.

Mother was unemployed, not active in the Children's academics, and failed to attend meetings at their schools. Family Ct. Op., 8/10/16, at 2. The whereabouts of the Children's fathers are unknown. ***Id.***

On April 15, 2016, DHS filed petitions requesting that the family court adjudicate the Children dependent. On April 27, 2016, the family court held a hearing on the dependency petitions, during which DHS represented that Mother had been "referred for parenting and other . . . services." N.T. at 23.

At the conclusion of the hearing, the family court adjudicated the Children dependent for truancy and neglect, later explaining that its "main concern is to ensure the health, safety, and welfare of the children that come before it" and that these dependency orders were "in the best interest of the child as a result of testimony regarding the [C]hildren's safety, protection, mental and physical welfare." Family Ct. Op., 8/10/16, at 4-5. The family court also ordered that each of the Children receive a medical examination within 48 hours.

In each of the Children's written dependency orders, dated April 27, 2016, the family court stated: "[T]he Court hereby finds that to allow this child to remain in the home would be contrary to the child's welfare, and that the Philadelphia Department of Human Services made NO Reasonable Efforts to prevent or eliminate the need for removal of this child from the home." Family Ct. Orders, 4/27/16 (emphasis in original).

The family court later clarified that during the more than five weeks between the GPS report and the adjudicatory hearing, as well as during the 12 days between the filing of the dependency petitions and the hearing, "DHS had ample time to plan for appropriate placement." Family Ct. Op., 8/10/16, at 4 (citing N.T. at 10, 16). The family court continued:

> Regrettably, DHS's failure to identify planned placement in a timely manner resulted in an emergency placement. An emergency placement could have been avoided, since DHS has ample notice as early as March 11, 2016, regarding the urgency of the conditions the[ C]hildren had been subjected. Instead, DHS put the well-being of the [C]hildren at risk, and did not make their placement its paramount concern.
>
> The [family c]ourt finds that DHS's efforts to appropriately place these four children came far too late. The [family c]ourt was clear in its final determination that DHS did not make reasonable efforts to make or finalize a permanency plan for the [C]hildren in a timely manner. DHS has abdicated its responsibility to ensure immediate safety of all of these [C]hildren, and as such, this [family c]ourt acted properly by finding "no reasonable efforts" for the DHS agency. . . .
>
> For the preceding reasons, the Court finds the Department of Human Services failed to meet [its] statutory burden by clear and convincing evidence regarding reasonable efforts made by DHS to finalize a permanent plan[.]

*Id.* (citing N.T. at 10, 23-24, 30).

On May 12, 2016, DHS filed a motion for reconsideration, requesting that the family court "vacate its ruling of April 27, 2016 that [DHS] made no reasonable efforts to prevent placement or eliminate the need for removal of

[the Children] from the home." DHS Mot. for Recons., 5/12/16, at 3, *ad damnum* clause. DHS explained:

> According to Section 472(a)(2)(A) of the Social Security Act,[3] it is required that the agency obtain a judicial determination that it has made reasonable efforts (1) to maintain the family unit and prevent the unnecessary removal of a child from the home or (2) to make and finalize a permanency plan in a timely manner. . . . If these "no reasonable efforts" findings are not vacated, DHS will not receive <u>any</u> funding for these four children for the duration of this case, thereby imposing a financial burden upon the Department that is not reflective of the work done and efforts made on this case.

DHS Mot. for Recons., 5/12/16, at 2 ¶¶ d, h (emphasis in original). On May 16, 2016, the family court denied DHS' motion.

On May 25, 2016, DHS filed four separate timely appeals from each of the Children's dependency orders. On June 15, 2016, this Court

---

[3] 42 U.S.C. § 672(a)(2)(A):

**(2) Removal and foster care placement requirements**

The removal and foster care placement of a child meet the requirements of this paragraph if—

**(A)** the removal and foster care placement are in accordance with—

**(i)** a voluntary placement agreement entered into by a parent or legal guardian of the child who is [a] relative . . . ; or

**(ii)** a judicial determination to the effect that continuation in the home from which removed would be contrary to the welfare of the child and that reasonable efforts of the type described in section 471(a)(15) [42 U.S.C. § 671(a)(15) (describing efforts to preserve and to reunify families)] for a child have been made[.]

consolidated the four appeals. On that same date, this Court entered a rule to show cause within ten days as to why DHS had standing as an aggrieved party to appeal these orders (in light of the fact that DHS's dependency petitions were granted by the family court), and why the appeal should not be quashed. On June 27, 2016, DHS responded to the rule to show cause.[4] The next day, this Court entered an order discharging the rule to show cause and referring the appeal to this panel for a decision on the merits; this order, however, was not a final determination as to the propriety of the appeal.

DHS now raises the following issues:

> 1) Whether [DHS] may properly appeal that portion of the [family] court's order[s] which denied that it made reasonable efforts to prevent the placement of four children, where the [family] court applied the incorrect legal standard, where the facts do not support the [family] court's order[s] under the correct legal standard, and where DHS faces significant financial penalties as a result of the [family] court's order.
>
> 2) Whether the [family] court erred as a matter of law in applying an incorrect legal standard when determining whether DHS made reasonable efforts to prevent or eliminate the need for the placement of K.S., T.B., M.B., and N.B., minor children.
>
> 3) Whether the [family] court erred as a matter of law in holding that the record evidence did not support [] order[s] finding that DHS made reasonable efforts to

---

[4] Ten days after the order of June 15, 2016, was Saturday, June 25, 2016. Monday, June 27, 2016, was the next business day thereafter. Thus, DHS' response was timely. 1 Pa.C.S. § 1908.

prevent or eliminate the need for the placement of the Children, where the [family] court found that the Children were dependent and where the [family] court ordered that the Children must be removed from the home immediately on an emergency basis.

DHS's Brief at 4.[5]

In its first issue, DHS contends that it has standing to appeal. DHS's Brief at 13-20. DHS reasons that, notwithstanding the family court's decision to grant its dependency petitions, it remains an aggrieved party because the court's orders negatively affected the agency. DHS claims that by finding that it failed to make reasonable efforts to prevent the Children's placement, "it will be rendered ineligible for federal reimbursement for foster care maintenance payments made on behalf of the children." **Id.** at 14. Accordingly, DHS concludes that its appeal should be heard by this Court.

"Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." **Johnson v. Am. Standard**, 8 A.3d 318 (Pa. 2010) (citation omitted).

> In Pennsylvania, the doctrine of standing at issue in this matter is a prudential, judicially created principle designed to winnow out litigants who have no direct interest in a judicial matter. For standing to exist, the underlying controversy must be real and concrete, such that the party initiating the legal action has, in fact, been "aggrieved." As this Court explained . . . , "the core concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution to his challenge." A party is aggrieved for purposes of

---

[5] No other party filed a brief.

establishing standing when the party has a "substantial, direct and immediate interest" in the outcome of litigation. A party's interest is substantial when it surpasses the interest of all citizens in procuring obedience to the law; it is direct when the asserted violation shares a causal connection with the alleged harm; finally, a party's interest is immediate when the causal connection with the alleged harm is neither remote nor speculative.

**Com., Office of Governor v. Donahue**, 98 A.3d 1223, 1229 (Pa. 2014) (citations and brackets omitted).

The issue of standing in this current appeal is analogous to that of **In the Interest of K.C.**, ___ A.3d ___, 2017 WL 727253 (Pa. Super. 2017). DHS was also the appellant in **K.C.** and similarly appealed from an order of a family court adjudicating a minor as dependent. **Id.** at *1. In that dependency order, the family court stated that DHS had not made reasonable efforts to prevent or to eliminate the need for placement. **Id.** at *1-2. This Court observed:

Our Rules of Appellate Procedure provide:

**Rule 501. Any Aggrieved Party May Appeal**

Except where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom.

Pa.R.A.P. 501. "[A] party is 'aggrieved' when the party has been adversely affected by the decision from which the appeal is taken." **In re J.G.**, 984 A.2d 541, 546 (Pa. Super. 2009), **appeal denied**, 605 Pa. 715, 991 A.2d 313 (2010) (citation omitted); **see also In the Interest of W.M.**, 41 A.3d 618, 620 (Pa. Super. 2012) (permitting CYS appeal of no reasonable effort finding).

***K.C.***, 2017 WL 727253 at *3. The Court concluded that "DHS has demonstrated that it is an aggrieved party because the trial court denied it the full relief requested, a finding of reasonable efforts, and because that denial causes DHS to be ineligible for federal funding for the placement of K.C." ***Id.*** Since DHS in the current action was also denied the full relief that it requested and faces the same consequences as in ***K.C.***, we similarly conclude that DHS has standing to pursue the instant appeal.

DHS next claims that the family court "erred because it applied the wrong legal standard when determining whether DHS made reasonable efforts to prevent the placement of the Children." DHS's Brief at 20; ***see also id.*** at 4, 20-36.

> Our standard and scope of review in dependency cases is well settled.
>
> We must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses.

***K.C.***, 2017 WL 727253 at *3 (brackets and citation omitted).

According to DHS, the family court should have applied the standard for placement findings under Section 6351(b) of the Domestic Relations Code, 42 Pa.C.S. § 6351(b), but, instead, the family court applied the standard applicable for permanency hearings under Section 6351(f), 42 Pa.C.S. § 6351(f). DHS's Brief at 21-22. DHS insists that the trial court's finding of no reasonable efforts was unfounded because the court never asked "whether DHS made reasonable efforts to prevent or eliminate the need for" removing the Children from their home. ***Id.*** at 21. Instead, according to DHS, the court applied an entirely different standard — whether DHS "made reasonable efforts to finalize a permanent plan for the children." In support, DHS quotes a passage from the hearing before the trial court:

> So, DHS, let's just talk. I don't know how I could give you all reasonable efforts because it's one thing if it's one kid, we have to do emergency placement and it comes as a surprise. It's another thing when it's four and the report is so bad that you guys had to have some indication that we were going to need placement. At least — even if it's a concurrent plan so the court would have some options but like I can't leave them with mom.

DHS's Brief at 22 (quoting N.T. at 41). In DHS's view, "Whether or not DHS identified a permanent placement for the children is simply not the same thing as whether DHS prevented or eliminated the need for the removal of the children from their homes." ***Id.*** at 24.

Section 6351 states, in pertinent part:

> **(b) Required preplacement findings.—**Prior to entering any order of disposition under subsection (a) that would

remove a dependent child from his home, the court shall enter findings on the record or in the order of court as follows:

(1) that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and

(2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or

(3) if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances; or

(4) if the court has previously determined pursuant to section 6332 (relating to informal hearing) that reasonable efforts were not made to prevent the initial removal of the child from his home, whether reasonable efforts are under way to make it possible for the child to return home; and

(5) if the child has a sibling who is subject to removal from his home, whether reasonable efforts were made prior to the placement of the child to place the siblings together or whether such joint placement is contrary to the safety or well-being of the child or sibling.

The court shall not enter findings under paragraph (2), (3) or (4) if the court previously determined that aggravated circumstances exist and no new or additional reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family are required.

\* \* \*

**(e) Permanency hearings.—**

(1) The court shall conduct a permanency hearing for the purpose of determining or reviewing the permanency plan

of the child, the date by which the goal of permanency for the child might be achieved and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child. In any permanency hearing held with respect to the child, the court shall consult with the child regarding the child's permanency plan, including the child's desired permanency goal, in a manner appropriate to the child's age and maturity. If the court does not consult personally with the child, the court shall ensure that the views of the child regarding the permanency plan have been ascertained to the fullest extent possible and communicated to the court by the guardian ad litem under section 6311 (relating to guardian ad litem for child in court proceedings) or, as appropriate to the circumstances of the case by the child's counsel, the court-appointed special advocate or other person as designated by the court.

\* \* \*

**(f) Matters to be determined at permanency hearing.**—At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

\* \* \*

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

42 Pa.C.S. § 6351.

In all four of its written orders adjudicating the Children dependent, under the heading "Reasonable Efforts," the family court wrote (capitalized emphasis in original): "Further, the [c]ourt hereby finds that to allow this

- 13 -

child to remain in the home would be contrary to the child's welfare, and that the Philadelphia Department of Human Services made NO Reasonable Efforts to prevent or eliminate the need for removal of this child from the home." When later justifying this determination, the family court stated that it based its "no reasonable efforts" determination solely on DHS's failure to have a plan for placement of the Children prepared at their dependency hearing. Family Ct. Op., 8/10/16, at 4 (citing N.T. at 10, 23-24, 30). The family court asserted that "DHS had ample time to plan for appropriate placement" but had "fail[ed] to identify planned placement in a timely manner." *Id.* (citing N.T. at 10, 16, 23-24, 30). The family court offered no other basis for its holding. *See id.* at 4-5.

As set forth above, nothing in Section 6351(b), which governs preplacement findings, requires a placement plan. Subsections 6351(e)-(f) state that the court must review a plan, including "[w]hether reasonable efforts were made to finalize the permanency plan in effect." However, subsections 6351(e) and (f) govern **permanency** hearings — not **dependency** hearings. Thus, in the instant case, the family court's consideration of DHS' reasonable efforts to create a permanency plan was improper. Accordingly, we conclude that the family court did not apply the appropriate standard and consequently abused its discretion; DHS's second issue thereby merits relief. *See K.C.*, 2017 WL 727253 at *3.

Finally, DHS maintains that the family court "erred because on this record, using the correct legal standard, DHS made reasonable efforts to prevent the placement of the Children." DHS's Brief at 36. DHS continues:

> For its part, the trial court did not identify or even consider the possibility that there were any efforts, reasonable or otherwise, that could have prevented the [C]hildren's removal.[11]
>
> > [11] Had the trial court used the correct legal standard, this would also serve as a basis to hold that DHS met the requirements of 42 Pa.C.S.A. § 6351(b)(3).
>
> . . .
> Even if this Court cannot find that DHS made reasonable efforts based on this record, the matter should still be remanded to the trial court with instructions to determine whether DHS made reasonable efforts to prevent or eliminate the need for placement under the correct legal standard, pursuant to Section 6351(b)(2). Barring this, and because the trial court itself was adamant about the removal of the Child[ren], the trial court could enter a finding under Section 6351(b)(3), that if preventative services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances.

DHS's Brief at 42. We agree.

"We must accept the facts as found by the trial court." **K.C.**, 2017 WL 727253 at *3. Nonetheless, the family court has made no findings pursuant to 42 Pa.C.S. § 6351(b)(2)-(3); as explained above, it only commented on the lack of a placement plan and said nothing about the reasonableness of the efforts or services provided by DHS to prevent removal. Thus, we remand for the family court to determine within thirty days "whether reasonable efforts were made prior to the placement of the child to prevent

- 15 -

or eliminate the need for removal" **or** "for an emergency placement, whether such lack of services was reasonable under the circumstances." ***Id.***[6]

We leave undisturbed the portion of the orders holding that the Children are (1) dependent, (2) should receive a medical examination within 48 hours, and (3) must be removed from their pre-petition homes. Notwithstanding our partial vacatur of the family court's orders, the Children shall not be returned to their pre-petition homes during the period that the family court resolves the Section 6351 issue pursuant to our remand. We note that no party has sought for the children to be returned, and we therefore conclude that it is in the best interests of the children to maintain the status quo while the family court acts on the remand.

Orders vacated in part. Case remanded. Jurisdiction retained.

Judge Dubow did not participate in the consideration or decision of this case.

---

[6] Both DHS and the family court clearly and repeatedly described the instant action as "emergency foster care" or "an emergency placement." N.T. at 23, 30, 40; Family Ct. Op., 8/10/16, at 4. Therefore, if ruling under (b)(3), the appropriate determination for the family court should be "whether such lack of services was reasonable under the circumstances" and not "whether reasonable efforts were made." ***See*** 42 Pa.C.S. § 6351(b)(2)-(3).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2017