J-S16031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 256 EDA 2021 |

Appeal from the Order Entered December 29, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0001100-2020

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:               **FILED SEPTEMBER 08, 2021**

Appellant, J.M. ("Father"), files this appeal from the order dated and entered December 29, 2020, in the Philadelphia County Court of Common Pleas, with respect to his minor, male child, J.M., born in May 2012 ("Child"), adjudicating Child dependent and finding removal in Child's best interest and welfare.[1]  After review, we affirm.

Of relevance, a September 3, 2020 General Protective Service ("GPS") report alleged inadequate hygiene, inadequate basic needs, and substance

---

[*] Former Justice specially assigned to the Superior Court.

[1] Child's mother, L.D. ("Mother"), did not file a separate appeal and is not a participating party in the instant appeal.

abuse, as well as truancy.[2]  N.T., 11/19/20, at 13-14, 58-59.  DHS validated this report.  *Id.* at 39, 58-59.  Mother and Father were offered but denied services.  *Id.* at 54-55.  Subsequent to the issuance of an Order of Protective Custody ("OPC") and Shelter Care Order, pursuant to the filing of a dependency petition on November 9, 2020, the court commenced an adjudicatory hearing on November 19, 2020.  Both Mother and Father were present and represented by counsel.  Child was represented by a guardian *ad litem*, also referred to as a child advocate.[3]

The Philadelphia Department of Human Services ("DHS") presented the testimony of Emma Olshin, DHS Investigative Social Worker; Anita Castro, Community Umbrella Agency ("CUA"), Turning Points for Children, Case Manager;[4] and Bob Buckhoffer, Community Behavioral Health ("CBH") representative.  DHS further presented Exhibits DHS-1 and DHS-2, which were marked and admitted.  *Id.* at 20; Continuance Order, 11/19/20.  Mother

---

[2] Allegations were additionally made that Mother locked Child in the basement and that Mother and Father brought Child with them to shoplift.  Notes of Testimony ("N.T."), 11/19/20, at 13-14, 53.  The allegations as to the basement were not substantiated.  *Id.* at 23.  Further, Mother and Father denied the shoplifting allegations.  *Id.* at 53.  The family had an extensive history with the Philadelphia Department of Human Services ("DHS") and were offered services as recently as February 2020.  *Id.* at 39-44.

[3] The court appointed the Defender Association of Philadelphia, Child Advocacy Unit, pursuant to order entered October 16, 2020.  Order Appointing Defender's Association as Guardian Ad Litem/Counsel for Child, 10/16/20.

[4] The trial court indicates in its Opinion that the names of Ms. Olshin and Ms. Castro are misspelled in the Notes of Testimony.  Trial Court Opinion ("T.C.O."), 8/3/21, at 3 fns. 6, 7.

briefly testified until her internet connection failed. *Id.* at 114-18. The child advocate was additionally unable to reach a witness. *Id.* at 103-07, 110-113. As such, the court ordered the temporary commitment to stand and continued the adjudicatory hearing until December 29, 2020. *Id.* at 119-21; Continuance Order, 11/19/20.

In the interim, the child advocate filed a motion for change of placement on December 4, 2020.[5] The court held a hearing on this motion on December 10, 2020. Mother and Father were present and represented by counsel. Child was represented by a child advocate, who presented the testimony of paternal great-aunt, M.M.; and Dominque Mines, CUA Case Manager Supervisor.[6, 7] Additionally, Mother and Father each testified on their own behalf. Father further presented Exhibit F-1, which was marked and admitted. N.T., 12/10/20, at 86; Motions Hearing, 12/10/20. The court denied the motion and ordered the temporary commitment to stand. *Id.* at 112-13; Motions Hearing Order, 12/10/20.

_____

[5] The child advocate sought for Child to be placed with a paternal great-aunt in Scranton. N.T., 12/10/20, 100-04; Motion for Change of Placement for Child, 12/4/20.

[6] The trial court indicates in its Opinion that the name of Ms. Mines is misspelled in the Notes of Testimony. T.C.O., 8/3/21, at 3 fn. 8.

[7] Ms. Mines had stepped in and was covering the case for the CUA, as Ms. Castro had left the agency. N.T., 12/10/20, at 34-35.

The adjudicatory hearing resumed on December 29, 2020.[8] Mother and Father were present and represented by counsel, and Child remained represented by a child advocate. Notably, the court incorporated the testimony from the December 10, 2020 motion hearing. N.T., 12/29/20, at 11-12. The child advocate presented the testimony of Maternal Aunt, D.H. DHS again presented the testimony of Dominique Mines. Additionally, Mother and Father each testified on their own behalf. Moreover, Exhibits DHS-3, M-1, F-1, and CA-1 were all marked and admitted. *Id.* at 47, 49, 53, 87, 100-03, 106-07; Order of Adjudication and Disposition, 12/29/20, at 2.

At the conclusion of the hearing, the court adjudicated Child dependent. *Id.* at 125. By Order of Adjudication and Disposition entered December 29, 2020, the court memorialized its finding and adjudicated Child dependent, discharging the temporary commitment and fully committing Child to DHS. Order of Adjudication and Disposition, 12/29/20, at 1-2. The court found that it was in Child's best interest and welfare to be removed from the home, and that DHS made reasonable efforts to prevent or eliminate the need for removal. *Id.* at 1. The court further ordered that legal custody transfer to DHS with Child's placement to remain in foster care. *Id.* at 2. Thereafter, on January 27, 2021, Father, through appointed counsel, filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

---

[8] This hearing, as well as the prior two referenced hearings, were conducted virtually due to the COVID-19 pandemic.

On February 26, 2021, the court filed a Notice of Compliance with Rule of Appellate Procedure 1925(a). *See* Trial Court's Notice of Compliance with Rule of Appellate Procedure 1925(a), 2/26/21. The court stated, in part, "[T]he trial court hereby gives notice that it stated on the record the reasons for its order of adjudication. . . . Furthermore, this [c]ourt addressed its determination that it is in the best interest of [Child] to be adjudicated dependent." *Id.* at 1 (unpaginated).

Following broad reference to the record, including witness testimony and exhibits presented, the court further stated, "To the extent that the Pennsylvania Superior Court believes that the trial court's statements on the record do not adequately address any issue on appeal, the trial court will submit a supplemental opinion upon remand." *Id.* at 1-2. Pursuant to Judgment Order entered July 7, 2021, the matter was therefore remanded for trial court to file with this Court, within thirty days, a Pa.R.A.P. 1925(a) Opinion providing the reasons for its decision to adjudicate Child dependent. The trial court filed an Opinion on August 3, 2021.

On appeal, Father raises the following issue for our review:

Did the [c]ourt err in removing the child from the father's care where the Department of Human Services failed to prove by clear and convincing evidence that there was a clear necessity to remove the child from father's care, and where there was not clear and convincing evidence that child was without proper parental care by father at the time of trial[?]

Father's Brief at 4.

Our standard of review for dependency cases is as follows:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record[] but does not require the appellate court to accept the lower court's inferences or conclusions of law.  Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (Pa. 2010) (citations omitted); *see also In the Interest of L.Z.*, 631 Pa. 343, 360, 111 A.3d 1164, 1174 (2015).  As we explained,

In dependency proceedings our standard of review is broad.  [*In Re C.J.*]*,* 729 A.2d 89 (Pa.Super. 1999).  Nevertheless, we will accept those factual findings of the trial court that are supported by the record because the trial judge is in the best position to observe the witnesses and evaluate their credibility.  [*Id.*]  We accord great weight to the trial judge's credibility determinations.  [*Id.*]  "Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate."  [*Id.*] at 92.

*In re S.J.-L.*, 828 A.2d 352, 355 (Pa.Super. 2003).

With his appeal, Father essentially raises two issues.  Noting that Mother and Father were making advances toward remedying any concerns, Father asserts that the evidence presented did not rise to the level of clear and convincing evidence to establish dependency.  Father's Brief at 12-13.  He argues:

The evidence presented to [sic] of prior truancy and prior condition of the home does not rise to the level of clear and convincing evidence of dependency.  The parents had enrolled the child in school, and he was attending, thereby remedying any prior truancy.  At the time of the trial[,] the home conditions were greatly improved, thereby remedying any deficiencies in the home

itself. The [c]ourt noted that there had been substantial change in the conditions of the home[.]

*Id.* at 13 (citation to record omitted).

> [T]o adjudicate a child dependent, a trial court must determine, by clear and convincing evidence, that the child:
>
> > is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.
>
> 42 Pa.C.S.A. § 6302(1). "Clear and convincing" evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re C.R.S.,* 696 A.2d 840, 843 (Pa.Super. 1997) (citation omitted).
>
> In accordance with the overarching purpose of the Juvenile Act "[t]o preserve the unity of the family wherever possible," *see* 42 Pa.C.S.A. § 6301(b)(1), "a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available." *In re R.T.,* [ ] 592 A.2d 55, 57 (Pa.Super. 1991) (citation omitted). This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *In re C.R.S., supra* at 845 (citation omitted).

*In re A.B.*, 63 A.3d 345, 349 (Pa.Super. 2013).

Instantly, in finding Child dependent, the trial court reasoned as follows:

> Parents, I have had an opportunity to review the exhibits and there has been a substantial change in the conditions of your home. So[,] I want to first commend you on doing a good job of cleaning up. While there is still a little bit of work to be done, it's certainly a substantial change from the initial photographs that were presented as exhibits.

And, Mother, I also want to commend you on getting into treatment. I want you to remain and please keep up the good work. While the parents did clean up, the extreme housing condition which the family lived is very concerning, as well as the hygiene of Father and [C]hild.

I don't find the testimony credible that the house was in the condition due to a fire that occurred one to two years ago. Notwithstanding the services that have been provided to the family, mental health, substance abuse, hygiene, truancy, and lack of medical attention for [Child] remain concerns. Again[,] I don't find the testimony regarding the fire credible, nor do I find the testimony regarding drug use and treatment credible.

I do find that the Department of Human Services presented clear and convincing evidence that [Child] should be adjudicated dependent and committed to the department based on present inability as well as truancy. . . .

N.T., 12/29/20, at 124-26.

In its Opinion, the court further stated:

In the matter at bar, the evidence shows that Father could not provide Child with proper parental care and control. DHS received a GPS report on September 3, 2020 purporting inadequate hygiene, inadequate basic needs, parental substance abuse, and truancy. These allegations were validated by DHS upon investigation.

During three separate home visits the DHS investigator, Ms. Olshin, found Father and Child to be disheveled and lacking proper hygiene. Ms. Olshin expressed concerns about Child's poor hygiene during her visit on September 10, 2020, yet his conditions had not improved by the time of her next visit on September 15, 2020. At that time, it was agreed upon with the parents that Child would go to stay with his maternal aunt, D.H. D.H. testified that when Child came to her home, he was noticeably dirty and did not smell clean.

D.H. testified further, that Child's unhygienic state was not a unique instance[,] as she stated he was in a similarly desperate state when he had come to stay with her in February 2020. At that time[,] Child's personal cleanliness and clothes were in such disrepair that D.H. felt it necessary to remove Child's clothes inside of a store and purchase all new items.

- 8 -

Father, [sic] failed to present any evidence to refute DHS' and D.H.'s account or explain why Child was left in such a state. Further, testimony from DHS' witnesses was found to be credible. Thus, we find the evidence provided by DHS to be clear and convincing that Father was incapable of ensuring basic hygienic care for his eight-year-old child, leaving him vulnerable to issues of overall health, safety, and welfare.

Father also failed to provide Child with safe and suitable housing. The DHS investigators found their home to be in horrible condition, covered in trash and clutter, the kitchen having flies and refrigerator with moldy food. Child was allowed to live in these conditions from at least February 2020, when D.H. had least [sic] been inside the residence, until September 4, 2020, when DHS' investigator assessed the home. At DHS' initial visit, they gave the family time to clean the home, but upon return on September 10, 2020, the condition of Child's room had still not improved as it remained full of trash and clutter.[9]

The evidence reflects Father's disregard of the poor household condition and the negative impact the living conditions would have on Child. Father attempted to excuse the condition of the house by citing a fire that had occurred one or two years earlier, that they had cleaned the home in two days after DHS' initial home visit, and that DHS' record of the house was inaccurate. The court found these excuses unacceptable as the exhibits introduced depicting the conditions of Child's bedroom and the living room filled with trash did not suggest fire damage. They depict a failure to provide a clean and safe environment for Child. Further, there was no explanation as to why it was necessary to wait until DHS' intervention to clean up from the house fire that had occurred over eighteen months ago. As a result of the above, the trial court found that DHS provided clear and convincing evidence that Father was incapable of providing safe and suitable housing for Child[,] and[,] as a result, risked Child's health, safety, and welfare.

_____

[9] We observe that at the hearing on December 29, 2020, Ms. Mines testified as follows as to CUA's assessment of the home following a December 22, 2020 visit, "So[,] while the home did appear to be -- could use a cleaning, there were no structural issues. There were no issues in the home that would prevent from the child being -- residing in that home." N.T., 12/29/20, at 87.

Child's basic needs were not met by Father regarding his education. Father failed to ensure that Child regularly attended school. School records show that Child had not attended school for over half the 2019-2020 school year. Father testified that Child had only missed some of that school year because of [the] family being displaced by the fire in February of 2019. School records, however, tell a very different story[,] as Child was not enrolled in school from June 5, 2019, to March, 2020. Child also missed 108 days of school in the 2018-2019 school year and 66 days of school in the 2017-2018 school year. He had also been allowed to miss four days prior to him beginning to reside with D.H. on September 15, 2020. A consistent disregard for the education of Child by Father shows a lack of ability to exercise proper care and control for the child.

For three years, Father neglected to attend to Child's basic medical and dental needs as the last documented medical care for Child was in September 2017. No documentation of dental care was presented. The evidence reflects, [sic] that Father neglected to take care of Child's physical health over that three-year period.

Testimony reflects valid issues of parental substance use. Father initially denied any substance use history but admitted to both DHS and CUA that he had either sought or been engaged in substance use treatment in the past. There was further testimony by D.H. that she had seen Father using substances in the past. Notably, this court did not find Father's testimony, [sic] with regard to substance abuse and treatment, [sic] credible. Father also failed to alleviate concerns about his substance use by failing to complete a previously ordered random drug screen.

The testimony provided by DHS, CUA, and D.H. regarding substance use by Father, Father's lack of transparency about substance use history and failure to follow court orders for testing[,] as well as the presence of drug paraphernalia in the home[,] are weighty. We are forced to question whether the issue persists. The evidence provided is clear and convincing that there is a valid concern about Father's substance use.

T.C.O., 8/3/21, at 6-9 (citations to record omitted).

Upon review, we discern no abuse of discretion in the trial court's

adjudication of Child as dependent. For the reasons stated by the trial court,

the record supports the trial court's determination. Hence, Father's challenge to the adjudication lacks merit.

Next, turning to Father's remaining challenge to Child's removal, Father argues error on the part of the trial court as DHS failed to establish clear necessity for removal. Father's Brief at 13-14. Father states:

> There was no showing that [F]ather had mental health issues [sic] other issues that could was [sic] a danger to the child or could not be managed with CUA supervision. There was no showing that any alleged anxiety issues or possible drug use by [M]other was a danger to the child or could not be managed with CUA supervision. There was no showing that [F]ather, [sic] having dirty clothes or appearing not to have showered on [a] day on which the social worker arranged a home visit at the house, immediately prior to the parents['] scheduled visit at the agency[,] occasion [sic] was a danger to the child or would have prevented him from safely parenting his child.
>
> The Department of Human Services did not make any efforts to prevent the placement of the child. At the time of the trial[,] the parents had enrolled the child in school and he was attending, thereby remedying any prior truancy. The home conditions were greatly improved, thereby remedying any deficiencies in the home itself. The [c]ourt noted that there had been substantial change in the conditions of the home[.]

*Id.* at 14.

The Juvenile Act, 42 Pa.C.S.A. § 6351, provides, in relevant part:

**(a) General rule.--**If the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the safety, protection and physical, mental, and moral welfare of the child:

> (1) Permit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child.

- 11 -

(2) Subject to conditions and limitations as the court prescribes transfer temporary legal custody to any of the following:

(i) Any individual resident within or without this Commonwealth, including any relative, who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child.

(ii) An agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child.

. . .

**(b) Required placement findings.--**Prior to entering any order of disposition under subsection (a) that would remove a dependent child from his home, the court shall enter findings on the record or in the order of court as follows:

(1) that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and

(2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or

. . .

With regard to reasonable efforts to prevent removal, we have stated:

As discussed above, prior to entering an order of disposition that removes a dependent child from his home, the court shall enter a finding concerning "whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home," or "if preventive services were not offered due to the necessity for an emergency

- 12 -

placement, whether such lack of services was reasonable under the circumstances[.]" 42 Pa.C.S.A. § 6351(b)(2), (3).

***Interest of K.C.***, 156 A.3d 1179, 1185 (Pa.Super. 2017).

Further, as to the removal of a child, this Court has explained:

The Juvenile Act has been interpreted to allow for the removal of a child from the custody of his parents only where there is clear necessity for such removal. Such necessity is implicated where the welfare of the child demands that he be taken from his parents' custody. We note that a decision to remove a child from his or her parents' custody must be reconciled with the "paramount purpose" of preserving family unity. This reconciliation may require that temporary custody of the child be given to someone other than the parents until such time as the welfare of the child no longer demands that he be separated from his parents. Ultimately, a hearing court is given broad discretion in meeting the goal of entering a disposition "best suited to the protection and physical, mental, and moral welfare of the child."

***In re S.M.***, 614 A.2d 312, 314-15 (Pa.Super. 1992) (citations omitted).

In the case at bar, in addressing removal, the trial court stated:

Evidence presented has shown Father's inability to provide proper parental care and control for Child, and[,] as a result, removal was necessary in this matter. The details of the inability of Father to meet Child's basic needs were explored previously. The result of this was that Child had poor hygiene, infrequent attendance at school, and no routine medical attention for the previous three years. Additionally, the housing was in deplorable condition. Even after being confronted by DHS about the state of the home, Father made no effort to ameliorate the condition of Child's bedroom.

The record clearly presents evidence that it was contrary to Child's welfare, safety, and health for him to remain in Father's care. DHS attempted to prevent this removal by presenting the family with a safety plan for the [c]hild, placing him in the care of D.H. Father initially agreed to this plan. Under the care of D.H., [C]hild's school attendance and hygiene improved, but[,] by October 15, 2020[,] she could no longer provide for Child. DHS previously made substantial efforts with this family dating back to 2017, to provide them with services and resources outside the

- 13 -

court system, which were declined. DHS again extended an offer for in[-]home services when investigating the September 3, 2020, GPS report[,] but the family chose not to engage with them. Father also failed to comply with court-ordered drug screen to show his sobriety.

Father's refusal to correct hazardous conditions in the home and cooperate with DHS or the court by accepting services or participating in drug screens shows a lack of willingness on the part of Father to alleviate concerns of the Commonwealth for the safety and welfare of Child. Based on the totality of the evidence presented at trial, this court found clear necessity for the removal of Child from Father's care.

T.C.O., 8/3/21, at 9-10 (citations to record omitted).

For the same reasons as set forth *supra* in support of a determination finding Child dependent, and the reasons stated by the trial court, the record likewise supports clear necessity for removal. Thus, we discern no abuse of discretion.

Here, given the specific circumstances, which reveal a lack of parental care and control, removal of Child was "best suited to the protection and physical, mental, and moral welfare of the child." *S.M.*, 614 A.2d at 314-15. As determined by the court, and supported by the record, concerns remained for Child's safety and welfare, resulting in the court finding, "clear necessity for the removal of Child from Father's care." T.C.O., 8/3/21, at 10. As such, Father's claim is without merit.

To the extent Father's challenge to removal includes a claim as to a lack of reasonable efforts to prevent removal, such a claim is likewise meritless. The record reveals that DHS did in fact make reasonable efforts to prevent

Child's removal utilizing a safety plan and offering services prior to Child's removal.

Accordingly, for the foregoing reasons, we affirm the trial court's order.

Order affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 9/8/2021*