J-A28017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.G., A MINOR | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.G., FATHER | | |
| | | No. 1597 EDA 2019 |

Appeal from the Order Entered May 30, 2019
In the Court of Common Pleas of Philadelphia County
Family Court at No: CP-51-DP-0000684-19

| | | |
|---|---|---|
| IN THE INTEREST OF: L.G., A MINOR | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.G., FATHER | | |
| | | No. 1598 EDA 2019 |

Appeal from the Order Entered May 30, 2019
In the Court of Common Pleas of Philadelphia County
Family Court at No: CP-51-DP-0000683-19

BEFORE:  PANELLA, P.J., STABILE, J., and COLINS, J.[1]

MEMORANDUM BY STABILE, J.:                    **FILED FEBRUARY 11, 2020**

---

[1]  Retired Senior Judge assigned to the Superior Court.

Appellant, D.G. ("Father"), appeals from the orders of May 30, 2019 declaring his children, M.G. and D.G. ("Children"), dependent, and placing them in the home of Children's paternal great aunt and uncle. We affirm.

On April 26, 2019, N.D. ("Mother") found two-year-old L.G. on N.D.'s bed with dilated pupils, breathing slowly and staring blankly. Mother had left L.G. on the bed watching television while Mother went to the bathroom to do her hair. Recognizing the symptoms and believing L.G. found and ingested an LSD pill from Mother's purse, which was also on the bed, Mother called an ambulance. St. Christopher's Hospital treated and observed L.G. and then, pursuant to an order for protective custody obtained by Philadelphia Department of Human Services ("DHS"), released her to the custody of her paternal great aunt and uncle. L.G. has not suffered any further complications from ingesting LSD.

As of this incident, Mother and Father were separated but still living in the same home. Mother claimed she found the LSD pill in the couple's car, that it belonged to Father, and that she put it in her pocketbook so that Father could not ingest it. A toxicology screen was performed 18 hours after L.G. reportedly ingested the pill, too late to confirm the presence of LSD, which clears the human blood stream within 12 hours. Nonetheless, Dr. Martina Lind, one of L.G.'s treating doctors, testified that L.G.'s symptoms were consistent with LSD ingestion.

Upon entry of the protective custody order for L.G., DHS devised a safety plan that forbade, among other things, Mother to leave the couple's other child, nine-year-old M.G., home alone with Father. Mother promptly violated that provision, and DHS obtained an order of protective custody for M.G. as well, placing him with paternal great aunt and uncle. A DHS investigation revealed no prior abuse or neglect of either child, and that Mother and Father maintain an appropriate home.

After securing protective custody, DHS filed dependency petitions for Children. The trial court conducted hearings on May 9 and May 30 of 2019. At the conclusion of the hearing the trial court adjudicated Children dependent and found that placement outside the home was necessary. Father filed these timely appeals. He raises three issues for our review:

1. Whether the trial court erred as a matter of law or abused its discretion in finding that the Philadelphia Department of Human Services met its burden to prove, by clear and convincing evidence, that L.G. and M.G. are dependent children[?].

2. Whether the trial court erred as a matter of law or abused its discretion in finding that the Philadelphia Department of Human Services met its burden to prove that it was clearly necessary to remove L.G. and M.G. from their home[?]

3. Whether the trial court erred as a matter of law in making the pre-placement finding required by 23 Pa.C.S.A. § 6351(b)(2)the Pennsylvania Juvenile Act, by determining that the Philadelphia Department of Human Services made reasonable efforts to prevent or eliminate the need for the removal of L.G. and M.G. from their home[?]

Father's Brief at 3.

We conduct our review as follows:

> [W]e must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses.

***Interest of K.C.***, 156 A.3d 1179, 1183 (Pa. Super. 2017)

Father argues the trial court erred in finding Children dependent because of one isolated incident with L.G., when no other evidence indicates that proper parental care and control were lacking. Father argues the trial court erred when it focused on the seriousness of the incident and the potential danger to L.G.

The Pennsylvania Juvenile Act defines "dependent child" in relevant part as a child who:

> (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

- 4 -

42 Pa.C.S.A. § 6302, "Dependent child." "The question of whether a child is lacking proper parental care and control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper care or control, and if so, whether such care and control are immediately available." *In re D.A.*, 801 A.2d 614, 619 (Pa. Super. 2002). Proper parental care, in turn, is "that care which (1) is geared toward the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *Matter of C.R.S.*, 696 A.2d 840, 845 (Pa. Super. 1997). The petitioner must establish dependency by clear and convincing evidence. *Id.* at 843. That is, the evidence must be "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Id.*

Father relies on *C.R.S.*, in which this Court reversed a finding of dependency where the child suffered trauma, but the record indicated that the child's injuries were consistent with resuscitation efforts after a bout of sleep apnea rendered the child unconscious. *Id.* at 843-45. The child had been abused on prior occasions, but the trial court concluded that the parents had made progress and that the prior incidents did not support a finding of present or future inability to render proper care and control. *Id.* at 845-46.

Father also relies on *In re T.D.*, 553 A.2d 979 (Pa. Super. 1988), *appeal denied*, 569 A.2d 1369 (Pa. 1989), in which the child's mother was failing to take her to therapy in accord with a service plan. The trial court

found the child dependent, reasoning that the child was a victim of sexual abuse, and that she was coping with the accidental death of a younger sister. *Id.* at 980-81. This Court reversed in a split decision, noting that testifying witnesses had not personally observed any ill effects in the child stemming from her failure to attend therapy. *Id.* at 982. Furthermore, the witnesses who testified that lack of therapy would harm the child were not psychologists or psychiatrists. *Id.* at 982-83.

Instantly, the trial court found a serious risk of injury to Children because, two-year-old L.G. was left unattended and within reach of an LSD pill. Dr. Lind testified that serious injury to L.G. was possible because she was physically developed enough to be mobile, and she was probably hallucinating from ingesting LSD. N.T. Hearing, 5/30/19, at 16. Moreover, the trial court credited Mother's testimony that L.G. ingested LSD that belonged to Father, and Father never offered any evidence to contradict Mother's testimony.[2] Dr. Lind said L.G.'s symptoms were consistent with ingestion of LSD, and nothing in the record evidences any other cause for the symptoms. This case, unlike *T.D.* and *C.R.S.*, involved an incident that created a risk of serious injury to a child, and the possibility that a similar incident could occur in the near future, given Father's dismissiveness and his dishonesty about his recreational drug

---

[2] Father argues on appeal that the only evidence of his LSD possession was inadmissible hearsay, but he failed to make a hearsay objection at the hearing. N.T. 5/30/19, at 29. He cannot raise this issue for the first time on appeal. Pa.R.A.P. 302(a).

use. The record before us supports a finding, by clear and convincing evidence, that L.G. was without proper parental care and control—as of the time of her ingestion of LSD—because of the likelihood of serious injury to L.G.

Next, we will consider whether such care and control was immediately available. On this point, the record reflects that Father was dismissive when confronted with the fact that L.G. was taken to the hospital after ingesting LSD that belonged to him, and that he reported no drug history. N.T. Hearing, 5/30/19, at 31-32. At a screening on May 9, 2019, Father tested positive for marijuana.[3] According to Mother, both she and Father had a history of recreational drug use, including LSD. *Id.* at 29.

For context, we provide the entirety of the trial court's opinion:

> So, with respect to these adjudicatory phase [sic] of this case, it's absolutely preposterous that there would even be a request that I not adjudicate dependent, based on the seriousness of this incident.
>
> And while, quite frankly, I'm glad that it didn't turn out in the alternative, LSD is not a drug that I'm willing to gamble on with a child's life. And let me be clear.

---

[3] The record also reflects that Father's creatinine was diluted. N.T. Hearing, 5/30/19, at 32. According to various unpublished memoranda from this Court, diluted creatinine evidences a person's ingestion of certain fluids in attempt to mask the presence of drugs in his or her urine. *In re P.B.*, 2019 WL 4415159 (Pa. Super. Sept. 16, 2019); *In re A.J.O.*, 2017 WL 3382461 (Pa. Super. Sept. 6, 2017). Father notes that no witness testimony or other evidence in the instant record explains this significance of his diluted creatinine. We have not relied on this fact in support of our decision.

I am incorporating the testimony from the shelter care hearing of 5/1, at which point, I ordered mom upstairs for a screen, which she took, and mom was positive for marijuana.

And, while this court is usually liberal in terms of marijuana use, understanding how far we've come in terms of views around marijuana, when I have to consider the safety of a two-year-old in making sure that you always are able to react to the needs of a two-year-old and, quite frankly, a nine-year-old, I'm not willing to gamble.

That being—so, I am definitely adjudicating both children dependent, based on present inability. With respect to the commitment from DHS, for purposes of today, I am going to do a full commit to DHS.

I don't anticipate that this needs to be a long-term commitment to DHS, and I will bring this case back before me in the next 90 days, in the hopes that at least mom can start testing negative for the marijuana.

[…]

I can't take lightly the fact that LSD was available and easily accessible. The operative thing would have been, when mom found the LSD, to throw it out.

When you realize that you have a two-year-old who is moving around, and into everything, that would've been the most appropriate thing to do, instead of just holding onto it.

N.T. Hearing, 5/30/19, at 46-48.

Based on the foregoing, we reject Father's argument that the trial court adjudicated Children dependent based solely upon on the seriousness of a single incident. In addition to the seriousness of the incident, the trial court was concerned that Father would not be responsible enough to prevent a similar incident from occurring in the near future, either with L.G. again or with nine-year-old M.G. The record supports the trial court's finding because,

as we have already noted, Father was dismissive of the incident and because Father tested positive for marijuana after having denied any recreational drug use. For these reasons, we discern no error in the trial court's finding that proper parental care and control was not immediately available to Children.

Next, Father argues that the record does not support the trial court's decision to remove Children from the home. This argument is simply a repeat of Father's argument that the trial court improperly relied on a single serious incident. Father notes that the couple's house was appropriate, and there was no evidence of past abuse. Once again, we reject Father's argument based on the record support for the trial court's concern that such an incident could happen again, potentially resulting in serious injury to one of the children. Both parents continued with their recreational drug use after the incident with L.G., and Father was dismissive of the incident and dishonest about his recreational drug use. We conclude the trial court did not err in removing Children from the home with the hope of returning them once it was satisfied that they would not have access to dangerous drugs.

In his third and final argument, Appellant claims the trial court erred in finding that DHS did not fail to make reasonable efforts to prevent placement of Children. Section 6351(b) of the Juvenile Code requires certain findings prior to placement of children outside of their home:

> **(b) Required preplacement findings.--**Prior to entering any order of disposition under subsection (a) that would remove a dependent child from his home, the court shall enter findings on the record or in the order of court as follows:

(1) that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and

(2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or

(3) if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances; or

(4) if the court has previously determined pursuant to section 6332 (relating to informal hearing) that reasonable efforts were not made to prevent the initial removal of the child from his home, whether reasonable efforts are under way to make it possible for the child to return home; and

(5) if the child has a sibling who is subject to removal from his home, whether reasonable efforts were made prior to the placement of the child to place the siblings together or whether such joint placement is contrary to the safety or well-being of the child or sibling.

42 Pa.C.S.A. § 6351(b).

As set forth above, Children were removed from the home prior to the adjudicatory hearing, without DHS having offered any preventative services. In connection with the entry of the shelter care order of May 1, 2019, the trial court found that no services were necessary due to the emergency that arose with L.G. Order, 5/1/19 ("Further, the [c]ourt hereby finds that to allow this child to remain in the home would be contrary to the child's welfare, and that [p]reventive services were not offered due to the necessity for emergency placement […].").  Thus, pursuant to § 6351(b)(3), the question is whether the lack of preventative services was reasonable under the circumstances. Given our recitation of the evidence above, especially Dr. Lind's testimony that

- 10 -

L.G. was at risk of suffering a serious injury, we conclude the record supports the trial court's finding. Furthermore, the record reflects that DHS implemented a safety plan while L.G. was still in the hospital, pursuant to which Children could remain at home so long as neither was left home alone with Father. The parents promptly violated that condition when Mother went to the hospital to visit L.G., leaving M.G. home alone with Father. The violation of the safety plan, in addition to L.G.'s need for emergency treatment, prompted the trial court to place both children with their great aunt and uncle. Father's argument ignores the import of § 6351(b)(3) and the evidence of record.

Because we have considered each of Father's arguments and found no basis for reversal of the trial court's order, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/20